### In the Matter of the Estate of BARBARA WOLF, Deceased.

Surrogate's Court, New York County, January 26, 1932.

*Henry Fluegelman*, for the proponent.

*Max D. Steuer* [*Abraham L. Bienstock* of counsel], for the contestant Herzog.

*Marks & Marks*, for all other contestants.

FOLEY, S. In this contested probate proceeding a preliminary question arises as to the domicile of the decedent. A will dated October 17, 1930, executed in New York county, has been offered for probate by Olga Wolf, a daughter-in-law of the decedent. A prior will dated January 9, 1929, was admitted to probate by the register of wills in Venango county, Penn., on the 2d day of January, 1931.

The proponent of the will offered for probate in this court alleges that at the time of her death the decedent was a resident of the county of New York. The contestants, a daughter of the decedent and certain grandchildren, claim that the decedent was a resident of Oil City, Penn. Applying to the evidence adduced at the trial

the general principles applicable to domicile laid down by our courts in the leading cases of *Dupuy* v. *Wurtz* (53 N. Y. 556) and *Matter of Newcomb* (192 id. 238), I hold that the decedent was domiciled at the time of her death in Oil City, Venango county, Penn. It is undisputed that from 1891 until 1909, the date of her husband's death, the decedent was domiciled with her husband in Oil City, Penn. The domicile of a widow is *prima facie* that of her late husband. (*Matter of Green*, 99 Misc. 582; affd., 179 App. Div. 890.) She continued to live in Oil City, in the house of her deceased husband, until about 1913. It is contended by the proponent that she thereafter changed her domicile to New York. It is well settled that " to effect a change of domicile for the purpose of succession there must be not only a change of residence, but an intention to abandon the former domicil, and acquire another as the sole domicil." (*Dupuy* v. *Wurtz*, 53 N. Y. 556.) The evidence offered by the proponent fails to establish such change.

It appears that in 1913 the decedent rented her house in Oil City and went to Washington, D. C., to live with one of her daughters, Minnie Herzog. In 1915 she returned to Oil City where she leased an apartment for a period of two years and nine months. In the latter part of 1916, or the early part of 1917, she leased an apartment at No. 4508 Fifteenth avenue, borough of Brooklyn, New York city. The landord of these premises testified that she lived there until about 1921. His testimony, however, is contradicted by declarations contained in letters written by the decedent from Atlantic City to her financial representative, Mr. Charles Lambert, in Oil City, Penn., on July 14, 1919, September 19, 1919, and October 26, 1919. At that time it is apparent that she was in Atlantic City. In these letters she referred to the fact that she intended to or had broken up her home in Borough Park, Brooklyn, and had stored her furniture. In the letter of September 19, 1919, she inquired, " How is everything in my old home town? " In the letter of October 26, 1919, she said, " I broke up my home and stored my furniture. My landlord raised me from $70 to $100 per month so am living in Atlantic City. I expect to make this place my home." In 1921 she returned to Oil City, Penn., to attend to her financial affairs. Between 1919 and 1926 she spent most of her time between Atlantic City, N. J., Washington, D. C., Oil City, Penn., and New York city. In 1926 the decedent was again in New York, residing with her daughter-in-law, Olga Wolf, at the Hotel Hamilton, 143 West Seventy-third street, where she remained for about three months. While in New York she opened an account on April 26, 1926, with the National City Bank, which she closed out on July 16, 1926, when she went to Atlantic

City. Only one deposit was made in that account. Apparently it was opened only for convenience. On June 22, 1926, the decedent wrote to a Miss Courtney, an employee of the Oil City National Bank of Oil City, Penn., who was in charge of her business affairs, wherein she asked: " What is the good word in our home town? " In letters dated July 6, 1926, and August 25, 1926, from Atlantic City to Miss Courtney in Oil City, she referred to her visit in New York for two months. In a letter written on January 10, 1929, from Atlantic City to Miss Courtney, she again referred to Oil City as " our old home town." But perhaps the most significant declaration made by the decedent bearing upon her intention is contained in a letter written from Washington, D. C., as late as February 18, 1929, to Miss Courtney, which reads in part as follows: " If you hear any furnished apartments in Oil City about two or three rooms and bath and kitchen as am so tired of boarding in Atlantic City and could get a maid to do the house work. * * * So if you be so kind and see if there is such a comfort to be had, I would get ready to come to live in Oil City." Up to this date, therefore, there has been shown no intention by the decedent to change her domicile to New York. On March 20, 1930, the decedent wrote to her attorney in Washington from Brooklyn, stating: " Just arrived here yesterday to visit with my grandchildren for a while." On September 4, 1930, the decedent wrote to Miss Courtney from Atlantic City, asking " How are things at home? " On September 18, 1930, the decedent arrived in New York, sojourning at the Hotel Hamilton until her death on December 15, 1930.

From the testimony of the physician who attended her, it appears that from the date of her arrival here, on September 18, 1930, to the date of her death, she could not possibly travel because of her physical impairment. It is significant also as bearing upon her intention that almost all of the decedent's personal property, of the value of approximately $72,000, consisting mostly of securities, was continuously located to the date of her death in Oil City, Penn. Her property in New York at the time of her death was relatively small in value. It consisted of personal effects, including wearing apparel, a trunk, a small rug and a watch. The only real estate which she owned was located in Oil City. Her securities were kept in a safe deposit box in the Oil City National Bank. All her checks, with the exception of checks on her temporary account with the National City Bank in New York in 1926, were drawn upon the Oil City National Bank. Her Federal income tax returns for the years 1927, 1928 and 1929 were filed with the Collector of Internal Revenue in the district in which Oil City,

Penn., was located. These returns were made in behalf of the decedent by Miss Courtney, who was in charge of all her financial affairs. It should also be noted that in none of the three wills made by the decedent in the latter part of her life was there contained a recital of her residing or sojourning in New York. The will dated January 9, 1929, admitted to probate in Oil City, Penn., was executed in Atlantic City, N. J., and contained the following recital: " I, Barbara Wolf, of the City of Washington, District of Columbia." An unexecuted copy of a will dated in 1928 which was received in evidence recited that the decedent was of Oil City, Penn. The will offered for probate here, executed in this city, contained no recital of her residence. In an agreement executed on August 18, 1927, the decedent refers to herself as of Atlantic City, N. J.

The testimony of the two witnesses produced by the proponent as to declarations made by the decedent that New York was her home was vague and indefinite. Nor were they accompanied, as shown above, by the necessary element of *factum* or conduct of the decedent effectuating the transfer of her domicile from Oil City, Penn., to New York. To create a change of an existing domicile, whether of origin or of choice, both the intention and residence, *animus et factum,* must be present. The written declarations of the decedent and her actions and conduct negative the meagre testimony of statements of intention made by the decedent to the witnesses. The burden of proving the change of domicile was upon the proponent. (*Matter of Newcomb,* 192 N. Y. 238.) This burden she has failed to meet. On the contrary, the evidence clearly points to a continuance of domicile in Oil City, Penn.

Having found that the record amply sustains the holding that the decedent at the time of her death was not a resident of New York county, but of Oil City, Penn., the only question remaining is whether the court should assume jurisdiction here of the estate of the decedent because of the personal property found in her room at the Hotel Hamilton. In view of the negligible amount of such personal property left by the decedent in this county, I hold, as a matter of discretion and for reasons of comity, that the court should not entertain jurisdiction of an original probate proceeding here, but should direct the transmission of the will offered for probate to the forum of the decedent's domicile in Pennsylvania where jurisdiction has been lawfully assumed. (*Matter of Leonori,* 130 Misc. 449.) If ancillary proceedings be necessary here to administer the New York assets, a proper application may be initiated for that purpose.

The proceeding is, therefore, dismissed. Submit decree on notice accordingly.