PARAMOUNT PICTURES, INC., Respondent, v. BEN BLUMENTHAL, Appellant.

First Department, May 5, 1939.

*I. Maurice Wormser* of counsel [*William Klein*], for the appellant.

*Louis Phillips* of counsel [*Irving Cohen* with him on the brief; *Austin C. Keough*], for the respondent.

MARTIN, P. J.   The plaintiff in this action has obtained a preliminary injunction restraining the defendant from taking any further steps in an action filed by him against the plaintiff herein in the High Court of Justice, King's Bench Division, England. The plaintiff is a domestic corporation, with its principal place of business located in the borough of Manhattan, in the city, county and State of New York, and the defendant is a citizen and resident of New York city.

The complaint herein alleges that there has been delivered to an officer of the plaintiff within the city of New York " a notice of writ, order, and a writ of summons issued out of the High Court of Justice, King's Bench Division, in England, in an action instituted by the defendant against the plaintiff herein," and " that pursuant to the aforementioned writ of summons, the plaintiff herein is commanded within twenty-eight days after the service of notice of the said writ to cause an appearance to be entered for it in the King's Bench Division of the said High Court of Justice in the said action   *   *   *   and that in default of such appearance the defendant herein may proceed therein and judgment may be given against the plaintiff herein in its absence."   It is further alleged:

" *Thirteenth.* That plaintiff will be irreparably injured if the defendant herein will continue to prosecute the aforementioned action instituted by him against the plaintiff, in that it will be obliged to defend said action and to engage solicitors and barristers to represent the plaintiff before the English courts and will be subjected to the unnecessary expense and difficulty of having its witnesses proceed to England for the trial of the said action, or in the event of default or special appearance in said action, the plaintiff will be obliged to contest in the courts of the United States the validity of any judgment that may be rendered in the English courts.

" *Fourteenth*. That the convenience of the plaintiff and the defendant would be best served by the commencement of an action in the State of New York where both the plaintiff and the defendant reside and transact business and where full and complete relief may be afforded to the defendant herein if he is entitled to any recovery from plaintiff. * * *

" *Sixteenth*. That the plaintiff has no adequate remedy at law against the improper institution of an action by the defendant against the plaintiff in the English courts and its only remedy is the relief which a court of equity may grant restraining the defendant herein from taking any affirmative action or proceeding in the suit commenced by him in the English courts as aforesaid."

The relief asked for by plaintiff is a judgment permanently enjoining the prosecution of the action in England.

It appears that the litigation grows out of an agreement between the parties looking to the sale of motion picture theatres controlled by the plaintiff and located in Great Britain. The defendant makes affidavit that the plaintiff agreed that it would not deal with others until negotiations initiated by him with one Major W. I. Anderson had definitely fallen through. At the same time the defendant had an agreement with one Oscar Deutsch of Odeon Theatres, Ltd., that he would have no dealings with plaintiff with reference to the theatres, except through defendant. Despite these agreements, plaintiff negotiated with Deutsch to the detriment of defendant and his negotiations with Major Anderson. Defendant has instituted an action in England against Deutsch and he has been advised that his action against Deutsch should be consolidated with his action against the plaintiff because of the interrelation of the claims.

A litigant may select the forum in which to ask for relief. The motive for such selection is not ordinarily open to scrutiny. The litigant may believe that he will be enabled to secure some advantage which he would not have if he brought his suit in the forum of his adversary, and this alone is not a ground for interfering with the generally recognized right to sue in any court having jurisdiction of the cause of action and competent to afford relief.

It is urged that the residents of this State are entitled to the protection afforded them by the laws and courts of the State where they reside and should not be exposed to inequitable litigation instituted in a foreign jurisdiction which will result in vexation and oppression. Unquestionably, the courts of this State have jurisdiction over the residents of the State and have power to restrain those within the jurisdiction from doing anything that is contrary to equity and good conscience to the injury and damage

of others, even though the threatened inequitable conduct consists of the prosecution of an action in a foreign jurisdiction. In *White, Stokes & Allen* v. *Caxton Bookbinding Co.* (10 N. Y. Civ. Proc. 146) LAWRENCE, J., said: " The general rule is, that the courts of this State will decline to interfere by injunction to restrain its citizens from proceeding in an action commenced in the courts of a sister State. There are exceptions to this rule, as where it can be shown that the suit sought to be restrained is not brought in good faith, or that it was brought for the purpose of vexing, annoying and harassing the party seeking the injunction [*Claflin & Co.* v. *Hamlin,* 62 How. Pr. 284; *Vail* v. *Knapp,* 49 Barb. 299; *Dinsmore* v. *Neresheimer,* 32 Hun, 204; *Dehon* v. *Foster,* 4 Allen, 545]."

A thorough discussion of the subject of " Injunction against suit in foreign jurisdiction " will be found in the footnotes to *Thorndike* v. *Thorndike* (142 Ill. 450; 32 N. E. 510; 21 L. R. A. 71) and *O'Haire* v. *Burns* (45 Colo. 432; 101 P. 755; 25 L. R. A. [N. S.] 267). From that discussion it appears that, among others, a foreign suit will be enjoined to prevent embarrassment, oppression or fraud. In this group will be found the matrimonial actions. An injunction was issued in *Greenberg* v. *Greenberg* (218 App. Div. 104) to restrain the prosecution by the husband of a Mexican divorce action. It appeared that the matrimonial domicile was in New York and the husband, the plaintiff in the Mexican action, sought to divorce his wife, the plaintiff in the New York action, and he also questioned the legitimacy of the child of the marriage. It was said that, while the decree of the Mexican court might be void in this State, it could be recognized as valid in Mexico, so that the husband would be free to contract a second marriage in that country, and to permit the Mexican court to grant the husband a decree would place the wife in an unfavorable light in the community in which she was living. In *Gwathmey* v. *Gwathmey* (116 Misc. 85; aff'd., 201 App. Div. 843) on the wife's application an injunction was issued against the husband restraining him from prosecuting an action for divorce in Florida where it appeared that his claim to residence in Florida was fraudulent. To the same effect see, also, *Kempson* v. *Kempson* (58 N. J. Eq. 94; 43 A. 97); *Miller* v. *Miller* (66 N. J. Eq. 436; 58 A. 188).

The foreign suit will be enjoined where the purpose is to evade the law of the domicile of the parties. In this category will be found the case of *Cole* v. *Cunningham* (133 U. S. 107) upon which great reliance is placed by the respondent. In that case an injunction was issued against a Massachusetts creditor who tried to obtain a preference over other creditors in Massachusetts by suing in New York contrary to the Massachusetts insolvency law forbidding preferences. (See *Dehon* v. *Foster,* 4 Allen, 545.)

Upon analysis, it will be found that the case of *Stevens* v. *Central National Bank* (144 N. Y. 50), cited below, is not precisely in point. There an injunction was granted restraining proceedings under a judgment which had been obtained through fraud.

In the case at bar it is not charged that the suit in England was instituted in bad faith or that it is motivated by fraud or an attempt to evade the law or public policy of this State.

It may be argued that most litigations are vexatious and annoying. In order, however, that litigation may be legally termed vexatious it must be shown that it is instituted maliciously and without probable cause. (*Calvo* v. *Bartolotta*, 112 Conn. 396; 152 A. 311.) There is not the slightest intimation that the plaintiff in the English suit has commenced his action maliciously or without probable cause.

In the final analysis, any equitable relief which would be granted to plaintiff herein would be based on the balance of convenience. We have found no authority which goes so far as to hold that additional expense and trouble in defending a suit would justify interference by a court of equity. As has been pointed out, a party is not compelled to sue where it is most convenient for his opponent. On the contrary, he is entitled to any procedural advantage he can secure, and the court should not deny him the privilege, unless it is exercised in bad faith and in a manner so as to outweigh all other considerations. *Fletcher* v. *Rogers* (27 Wkly. Rep. 97 [C. A. 1878]) is authority for the proposition that mere hardship or inconvenience is not sufficient to justify the interference of the court.

It is not a question of power, but one of discretion or propriety. In *Hyman* v. *Helm* (L. R. [1883] 24 Ch. Div. 531) the court held that even though the foreign proceeding may be of some advantage to the party prosecuting it, the court will not interfere unless the action is vexatious.

The appropriate forum in which to test the effect of the alleged " service " of the process herein is in the English court, and we do not undertake to pass upon the question of the jurisdiction of that court.

For the reasons indicated, the order appealed should be reversed, with twenty dollars costs and disbursements, and the motion for an injunction *pendente lite* denied.

TOWNLEY and GLENNON, JJ., concur; UNTERMYER and COHN, JJ., dissent.

UNTERMYER, J. (dissenting). Both the plaintiff and the defendant are resident in this State. The conduct of the defendant in instituting an action in the English courts, which upon the conceded

facts have no jurisdiction over the plaintiff, presents a situation in which a court of equity should afford relief. The foundation of its jurisdiction is not alone the expense and the inconvenience of conducting litigation at a distant place but the fact that these will be sustained by the plaintiff in litigating in a jurisdiction which is not competent to render any effective judgment. Nevertheless, unless the plaintiff shall defend that action, either upon the merits or because the English courts are without jurisdiction, it will suffer the embarrassment and danger of a judgment by default, however void the judgment may be.

If a resident of this State can thus maintain an action against his neighbor here in some remote corner of the world which is without jurisdiction to render any judgment and thereby inflict expense and inconvenience which a court of equity is helpless to prevent, the consequences will be serious indeed. Within all the authorities cited in the prevailing opinion, such inequitable conduct should be restrained.

The order should be affirmed.

COHN, J., concurs.

Order reversed, with twenty dollars costs and disbursements, and motion denied.